UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case no. 4:07cv1324 TCM ) |
| JAMES M. GALLINGER, | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Pending in this action is a motion filed by Plaintiff, The Northwestern Mutual Life Insurance Company, the dismiss the counterclaims filed by Defendant, James M. Gallinger, for failure to state a claim upon which relief can be granted. [Doc. 38]

### Background

Plaintiff alleges in Count I of its complaint that Defendant falsely represented on a questionnaire for his 2003 application for disability insurance that he had not been treated in the past ten years for "arthritis, sciatica, gout, or any disorder of the muscles, bones, joints, spine, back or neck." (Compl. ¶¶ 8-12.) Plaintiff relied on this representation and issued Defendant a disability insurance policy, No. DI 507 981 (the "981 policy"). (Id. ¶ 13.) In April 2006, Defendant applied for partial disability benefits under the 981 policy, citing a disability relating to his hips. (Id. ¶ 15.) When investigating his claim, Plaintiff learned that Defendant had been diagnosed with arthritis in his right hip in 1995, had decreased range of motion in that hip, and had "longstanding hip pain." (Id. ¶ 17.) Plaintiff seeks to rescind

the 981 policy on the grounds of Defendant's allegedly fraudulent representation. (Id. ¶ 18.)

In Count II of its complaint, Plaintiff seeks to rescind a Disability Overhead Expense Policy, No. DI 513 470 (the "470 policy"), that it issued to Defendant based on the same false representation cited above and on his representation in a declaration that he was still in good health, that his answers on the questionnaire were still true, and that he had not since had any signs or symptoms of "any disorder, illness or disease, and he had not taken any medication." (Id. ¶¶ 25-26, 30.) Defendant applied in April 2006 for benefits under the 470 policy. (Id. ¶ 34.) These too were denied on the grounds of Defendant's allegedly fraudulent representation. (Id. ¶ 36.)

In Count I of his counterclaims, Defendant seeks to enforce the 981 policy, alleging, in part, that any misrepresentation by him "amounts to oversight or mistake" based on Plaintiff having been previously provided "with all necessary medical information through issuance of additional prior policies and an ongoing relationship dating back to 1986." (Countercl. ¶ 17.) Defendant's disability had been determined to be compensable under five prior policies. (Id. ¶ 10.) Additionally, Defendant alleges that he had executed a release to give Plaintiff access to his medical records, that "it is Plaintiff's policy and standard industry practice in the insurance industry to collect an applicant's medical records for evaluation prior to the issuance of a policy," and that Plaintiff "had the last clear opportunity to evaluate any and all necessary medical information relevant to [the 981 policy]" by means of the release form. (Id. ¶¶ 12, 18-19.)

In Count II of his counterclaim, Defendant cites similar allegations as the basis for his breach of contract claim relating to the 470 policy. (Id. ¶¶ 26, 28-29, 33-35.)

Defendant alleges in Count III that Plaintiff's failure to pay benefits due him under the 981 policy and the 470 policy and its effort to rescind both policies is "willful and without reasonable cause or excuse." (Id. ¶ 55.) In support of this allegation, Defendant specifically cites to two other policies issued him by Plaintiff: D 525 321 (the "321 policy") issued in April 1987 and D 611 375 (the "375 policy") issued in June 1988. (Id. ¶¶ 42, 45.) He completed a questionnaire pursuant to each application; each questionnaire included an inquiry into whether he had been treated in the past ten years for "[r]heumatism, arthritis, gout, or disorder of the muscles or bones, spine, back or joints." (Id. ¶¶ 44, 47.) He had answered "yes" both times. (Id.) This affirmative answer was a full disclosure of his medical history "during the course of their twenty (20) year relationship as insurer/insured." (Id. ¶ 51.) This and the access to his medical records by means of the release form negate any foundation or reasonable belief by Plaintiff that his misrepresentation on the 2003 questionnaire was fraudulent. (Id. ¶ 53.)

In Count IV, Defendant alleges, "[u]pon information and belief," that he paid "valuable consideration" for an option under which he did not have to submit to a medical examination or to respond to inquiries about his medical history in order for the 981 policy and the 470 policy to issue. (Id. ¶ 59.) "Upon information and belief," Plaintiff's agent told him that such option was in his best interest and was worth the price. (Id. ¶ 60.) Regardless, the agent also had Defendant fill out the questionnaire. (Id. ¶ 61.) Told that he had purchased the options, Plaintiff responded that he had waived them by responding to the

questionnaire. (Id. ¶ 62.) Defendant, "[u]pon information and belief," alleges that "Plaintiff had no intention of honoring" the options that he had paid for, that he relied on Plaintiff's agent's representations when completing the questionnaire, and that, due to Plaintiff's allegedly fraudulent misrepresentations, he has suffered irreparable harm. (Id. ¶¶ 64-65, 67-68.)

Defendant requests a trial by jury on all four counts of his Counterclaim. (Id. ¶¶ 21, 37, 57 .)

## Discussion

Standard of Review. The parties disagree about the effect of the Supreme Court's decision in **Bell Atlantic Corp. v. Twombly**, 127 S.Ct. 1955 (2007), on this Court's review of the sufficiency of Defendant's allegations to state a claim.

The Eighth Circuit Court of Appeals recently quoted **Twombly** in the context of reviewing a district court's grant of a motion to dismiss: "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [counterclaimant's] obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" **Benton v. Merrill Lynch & Co.**, 524 F.3d 866, 870 (8th Cir. 2008) (quoting Twombly, 127 S.Ct. at 1964-65). "The complaint must allege facts which, when taken as true, raise more than a speculative right to relief." **Id.** (citing Twombly, 127 S.Ct. at 1965). "Specific facts are not necessary[, however]; the statement need only 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" **Erickson v. Pardus**, 127 S.Ct. 2197, 2200 (2007) (quoting Twombly, 127 S.Ct. at 1964)

(last alteration in original).  In other words, a complaint must include "enough facts" to "nudge . . . [the] claims across the line from conceivable to plausible."  **Twombly**, 127 S.Ct. at 1974.

Counts I and II:  Breach of Contract.  In its two-count complaint, Plaintiff seeks rescission of two disability insurance policies issued to Defendant.  In the first two counts of his counterclaim, Defendant seeks performance of those policies.  The burden of proving that coverage is due him is on Defendant.  See **Smith ex rel. Stephan v. AF & L Ins. Co.**, 147 S.W.3d 767, 774 (Mo. Ct. App. 2004).  To establish a prima facie case of coverage, Defendant must show:  "(1) issuance of the policy; (2) delivery of the policy; (3) payment of the premium; (4) the loss insured against; and (5) notice of loss and proof of loss given to insurer as the policy requires."  **Id.**  Defendant's allegations are sufficient, if proven, to establish a prima facie case.

Defendant also attempts to include allegations sufficient to refute Plaintiff's proffered reason for rescinding the two polices: a fraudulent misrepresentation.

"Generally, an insurance company may avoid an insurance policy for a fraudulent misrepresentation or a material misrepresentation in the application."  **Central Bank of Lake of the Ozarks v. First Marine Ins. Co.**, 975 S.W.2d 222, 225 (Mo. Ct. App. 1998).  "To state a claim for fraudulent misrepresentation [Defendant] must prove:

> a representation; that is false; that is material; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent it be acted on; the hearer's ignorance of the falsity of the representation; the hearer's reliance; the hearer's right to rely on it; and injury."

**Velder v. Cornerstone Nat'l Ins. Co.**, 243 S.W.3d 512, 517 (Mo. Ct. App. 2008) (quoting State ex rel. PaineWebber, Inc. v. Voorhees, 891 S.W.2d 126, 128 (Mo. 1995) (en banc)). The allegations in Defendant's first two counts address whether he intended that Plaintiff rely on what he characterizes as a misstatement, whether Plaintiff was ignorant of the falsity of the misstatement, whether Plaintiff relied on it, and whether Plaintiff had the right to rely on it. Although Plaintiff correctly notes that the two policies attached as exhibits to Defendant's counterclaim do not support the allegations therein, those are but two of five policies cited by Defendant. Defendant's allegations that Plaintiff had previously been provided all his relevant medical information and that he executed a medical release form may negate the element of intent.

A policy may also be rescinded based on a material misrepresentation. See **First Marine Ins. Co.**, 975 S.W.2d at 225. "A misrepresentation is material if an insurer, 'acting reasonably and naturally in accord with [its] custom and practice, would have relied on the representation.'" **AF & L Ins. Co.**, 147 S.W.3d at 774 (quoting Adams v. Columbia Mut. Ins. Co., 978 S.W.2d 10, 11 (Mo. Ct. App. 1998)) (alteration in original). Defendant alleges that Plaintiff's practice was to obtain and review an applicant's medical records, thus challenging Plaintiff's reliance on his misstatement.

These foregoing allegations are sufficient to state a claim in Counts I and II of the Counterclaim for breach of the two insurance policies.

<u>Count III: Vexatious Refusal to Pay.</u> Defendant claims in Count III that Plaintiff's failure to pay him benefits due under the two policies is a vexatious refusal. In support of this claim, Defendant cites the two insurance policies attached as exhibits to his

Counterclaim. One of these policies was issued in 1987, the other in 1988. Both included a similar question about treatment during the previous ten years, to which Defendant replied in the affirmative. Defendant also attaches a three-page letter from Plaintiff explaining why the 981 and 470 policies were being rescinded. This letter included citations to March 1995, April 1995, April 2004, May 2006, and June 2006 medical records that referenced problems with Plaintiff's right hip.

A vexatious refusal is a refusal that is "'willful and without reasonable cause as it would appear to a reasonable and prudent person.'" **Thornburgh Insulation, Inc. v. J.W. Terrill, Inc.**, 236 S.W.3d 651, 657 (Mo. Ct. App. 2007) (quoting AF & L Ins. Co., 147 S.W.3d at 778); accord **State of Mo. ex rel. Pemiscot County v. Western Surety Co.**, 51 F.3d 170, 174 (8th Cir. 1995). "[T]he issue of whether a refusal was vexatious must be based on the 'facts as presented at the time the insurer was asked to pay under the insurance policy.'" **Tauvar v. American Family Mut. Ins. Co.**, — S.W.3d — , 2008 WL 4127573, *2 (Mo. Ct. App. 2008) (quoting JAM Inc. v. Nautilus Ins. Co., 128 S.W.3d 879, 898 (Mo. Ct. App. 2004)).

In the **Western Surety Co.** case, an insured alleged that a denial of benefits was a vexatious refusal to pay based on, among other things, an inadequate explanation of the denial. 51 F.3d at 174. The court held that a three-paragraph letter setting forth the reasons for the denial was a sufficient explanation. **Id.**

In the instant case, Plaintiff set forth its reasons for denying coverage in a three-page letter, including citations to Defendant's medical records that contradicted his answer to a 2003 questionnaire about treatment during the previous ten years. The earlier 1987

questionnaire would refer to medical treatment between 1977 and 1987 and the 1988 questionnaire would refer to medical treatment between 1978 and 1988; the 2003 questionnaire would refer to medical treatment between 1993 and 2003.  An affirmative answer to the earlier questionnaires does call into question the reasonableness of Plaintiff's reliance on Defendant's undisputedly incorrect answer to a question in 2003.

Defendant's Count III fails to state a claim for vexatious refusal.

Count IV:  Fraudulent Misrepresentation.  Defendant alleges in Count IV, "[u]pon information and belief," that Plaintiff's agent fraudulently misrepresented (a) the worth and usefulness of an option which would allow him to avoid a medical examination or inquiry into his medical history, and (b) the consequences of him completing the questionnaire.

"It is well-established under Missouri law that the concealment of a fact which one has the duty to disclose is encompassed within a fraudulent misrepresentation claim." **Independent Business Forms, Inc. v. A-M Graphics, Inc.**, 127 F.3d 698, 701 (8th Cir. 1997).  "[F]raudulent inducement may be accomplished with either a knowingly false representation or a concealment of a fact for which there is a duty to disclose." **Id.** at 701-02.  Claims of fraud must, however, be pled under Rule 9(b) of Federal Rules of Civil Procedure with particularity, including "'the time, place and contents of false representations, as well as the identify of the person making the misrepresentation and what was obtained or given up thereby.'" **BJC Health Sys. v. Columbia Cas. Co.**, 478 F.3d 908, 917 (8th Cir. 2007) (quoting Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001)).  "In other words, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." **Id.** (quoting United States ex rel. Costner v. URS Consultants, Inc., 317

F.3d 883, 888 (8th Cir. 2003)). This particularity required by Rule 9(b) "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." **Costner**, 317 F.3d at 888.

Defendant's allegations in Count IV of fraudulent misrepresentation lack the particularity required by Rule 9(b). Specifically, an allegation that the misrepresentations are by an agent of Plaintiff does not identify who, and there are no allegations of when or where. The addition of the phrase "[u]pon information and belief" does not compensation for the lack of particular allegations to support Defendant's claims of fraud. See, e.g. **United States ex rel. Marlar v. BWXT Y-12, L.L.C.**, 525 F.3d 439, 445-46 (6th Cir. 2008) (affirming dismissal of fraud claims based on "information and belief" as failing to satisfy Rule 9(b), and noting that such claims lack allegations of personal knowledge and concrete facts); **Universal Commc'n Sys. Inc. v. Lycos, Inc.**, 478 F.3d 413, 426-27 (1st Cir. 2007) (finding that allegation of fraudulent scheme based only on "information and belief" "must set forth the source of the information and the reasons for the belief").

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion to dismiss of The Northwestern Mutual Life Insurance Company is **GRANTED** as to Counts III and IV of the Counterclaim and **DENIED** as to Counts I and II. [Doc. 38]

                                                    <u>/s/ Thomas C. Mummert, III</u>
                                                    THOMAS C. MUMMERT, III
                                                    UNITED STATES MAGISTRATE JUDGE

Dated this <u>18th</u> day of November, 2008.