UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NORTHWESTERN MUTUAL LIFE<br>INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES M. GALLINGER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Case Number 4:07cv1324 TCM<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Pending in this action is a motion filed by defendant, James. M. Gallinger ("Defendant"), for leave to file Amended Counterclaims against plaintiff, the Northwestern Mutual Life Insurance Company ("Plaintiff"). [Doc. 51] The amended counterclaims would restore two counts, Count III for vexatious refusal to pay and Count IV for fraud, that were earlier dismissed by the Court.

## Background

At issue in this action are two disability insurance policies issued by Plaintiff to Defendant. Alleging that Defendant gave a misleading answer on an application for each policy, Plaintiff seeks in its complaint to rescind both policies.

Defendant filed a timely answer to the complaint on August 21, 2007. On October 3, the Court entered a scheduling order requiring, inter alia, that all motions for amendment of pleadings be filed no later than April 28, 2008. On April 28, new counsel entered for Defendant and moved for leave to file a counterclaim. Over Plaintiff's objections on the grounds of unexplained and prejudicial delay, leave was granted. Plaintiff then moved to dismiss the counterclaims. On November 18, the motion was denied as to Counts I and II and granted as to Counts III and IV.

By January 30, 2009, discovery was to be completed.  Daubert[1] motions were to be filed no later than February 15.

The next day, on February 16, Defendant filed the pending two-page motion to amend his counterclaims.  This motion, unaccompanied by a supporting memorandum as required by Local Rule 4.01of the Eastern District of Missouri, explains that Plaintiff had produced over 2500 pages of information after the Court's earlier ruling dismissing two of the four compulsory counterclaims based on Defendant's inability to plead sufficient supporting facts and that Defendant had since discovered those facts.  The amended counterclaims repeat Counts I and II without additions or deletions, add 34 paragraphs to Count III, and add 14 paragraphs to Count IV.  Attached to the motion are 11 exhibits, including copies of disability insurance policies issued to Defendant by Plaintiff in October 1984 (Exhibit "A"); April 1987 (Exhibit "B"); June 1988 (Exhibit "C"); February 1994 (Exhibit "D"); January 1995 (Exhibit "E"); August 2003 (Exhibit "F"); and September 2003 (Exhibit "G").[2]  Exhibits "H," "I," and "J" are copies of letters to Defendant from Plaintiff.  The last exhibit, Exhibit "K," is a copy of an "Underwriting Referral" from November 12, 2006.  The referral outlines Defendant's relevant medical history, poses the question whether Plaintiff would have issued the two policies at issue differently had it known of osteoarthritic changes in Defendant's right hip, and states that a permanent medical exclusion rider for the right hip would have been issued with the policies.

The added paragraphs in Count III include an allegation that the two policies include a section titled "Time Limit on Certain Defenses," which "specifically require[s] that after the polic[ies] ha[ve] been in force for two years from the date of issue, no misstatement, except a

---

[1]Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

[2]Exhibits "F" and "G" are attached as Exhibits "A" and "B" to the complaint.

fraudulent misstatement, in the application may be used to rescind the policy or deny a claim." (Id. ¶¶ 58-59) (internal quotation omitted). The new paragraphs also include allegations that "Plaintiff is without foundation or reasonable belief in its allegation that Defendant deceived with intent to defraud Plaintiff or otherwise fraudulently misstated his medical condition at the time of completing the Application and Paramedical Questionnaire for [the two policies]", Plaintiff's refusal to pay, is "without any indicia of fraud on the part of Defendant as required by the policies and Plaintiff's desire to rescind said policies, is willful and without reasonable cause or excuse," and that "Plaintiff's refusal to pay benefits, based on a suspicion of a fraudulent misstatement without sustainable facts to support that suspicion, is vexatious." (Am. Countercl. ¶¶ 81-83.) Defendant bases his allegations of Plaintiff's willful and unreasonable refusal to pay benefits on his answers to various Paramedical Questionnaires completed during the course of his long relationship with Plaintiff. For instance, in response to an answer[3] in a 1987 application for a disability insurance policy to the question whether he had "been treated for of had any indication of . . . "arthritis, gout, or disorder of the muscles or bones, spine, back or joints" in the past ten years, the policy was issued with a medical rider excluding coverage for his knees. (Id. ¶¶ 48-49.) His answer to a similar question when applying for the two 2003 policies and a 1995 diagnosis of arthritis in his right knee following an x-ray are cited by Plaintiff as the reasons for wishing to rescind the two policies. (Compl. ¶¶ 8-9, 11, 23-25, 28.) In his amended Count III, Defendant alleges that this 1995 x-ray is the only indication of right hip treatment within ten years of the two policies being executed and is no indication of fraud given Plaintiff's and Defendant's 20-year history. (Am. Countercls. ¶¶ 66-67, 74, 76-79.)

---

[3]Defendant responded that he had undergone surgery in 1978 to replace the cartilage in his right knee.

In his amended Count IV, Defendant additionally alleges that Plaintiff's agents, Michael Kilker and later Michael Dulick, represented that certain "Additional Purchase Benefit" options would entitle him to purchase additional insurance without the requirement of completing a Paramedical Questionnaire. (Id. ¶¶ 92-97.) Defendant further alleges that Kilker and Dulick fraudulently claimed that purchase of the benefits was his best interest and that Dulick later intentionally failed to inform him that he had unused "Additional Purchase Benefits" that he could have exercised when applying for the policies at issue. (Id. ¶¶ 98-106, 107-111, 114.)

Plaintiff opposes Defendant's motion, arguing that the untimeliness of the motion is not excused by the new information cited by Defendant as that information was available to him before the Court's November 2008 ruling and that, regardless, the amendments are futile.[4] Plaintiff states, without contradiction by Defendant, that Exhibit "K" was included in the initial voluntary disclosures given Defendant in November 2007.

## Discussion

Defendant correctly notes in his reply memorandum that Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend should be freely given "when justice so requires." Fed.R.Civ.P. 15(a); **Foman v. Davis**, 371 U.S. 178, 182 (1962). Rule 16(b), however, requires a showing of good cause for the modification of a scheduling order. Fed.R.Civ.P. 16(b)(4); **Popoalii v. Correctional Med. Servs.**, 512 F.3d 488, 497 (8th Cir. 2008). The interplay between Rule 15(a) and Rule 16(b) is settled in the Eighth Circuit. **Sherman v. Winco Fireworks, Inc.**, 532 F.3d 709, 716 (8th Cir. 2008). "'[I]f a party files for leave to amend outside the court's scheduling order, the party *must* show cause to modify the schedule.'" **Id.** (quoting Popoalii, 512

---

[4]Plaintiff also argues that leave to amend should be denied because Defendant did not file a supporting memorandum as required by E.D.Mo. L.R. 4.01. In the instant case, the Court declines to deny Defendant leave on this ground.

F.3d at 497). Thus, "Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)." **Id.** To hold otherwise "would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." **Id.** (internal quotations omitted) (alteration in original).

"'The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements.'" **Id.** (quoting Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006)). If the movant has not been diligent, prejudice to the opposing party is generally not considered. **Id.** at 717.

The Court finds that Defendant has not been diligent in seeking leave to amend his counterclaims to cure the deficiencies cited in the Court's November 2008 order. The pending motion was filed three months after that order and almost ten months after the scheduling order deadline for amendment of pleadings. Even had the motion been immediately granted, the deadline for the filing of dispositive motions would have passed before Plaintiff's answer to the counterclaims would have been due. Moreover, the exhibits attached to the amended counterclaim were clearly available to Defendant at least by November 2007, long before the pending motion was filed. And, Defendant fails to explain what new allegations in the proposed amended counterclaims were not previously available to him.

Defendant having failed to show good cause for his late motion for leave to amend,

**IT IS HEREBY ORDERED** that Defendant's motion for leave to file amended counterclaims is **DENIED**. [Doc. 51]

**IT IS FURTHER ORDERED** that a pretrial conference is set in this case for **Thursday, May 28, 2009**, at **9:00 a.m.** in chambers.  The parties should be prepared to discuss all pretrial matters, including any motions in limine and jury instructions.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  30th  day of April 2009.